**In the Matter of Robert M. BROWN, Debtor.**

**Triad Financial Corp., Movant,**

v.

**Robert M. Brown, Debtor; and Camille Hope, Trustee, Respondents.**

**No. 06–50193 RFH.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

June 30, 2006.

Robert A. Fricks, Warner Robins, GA, for Movant.

John K. James, Warner Robins, GA, for Robert M. Brown.

Tony D. Coy, Macon, GA, Chapter 13 Trustee.

### MEMORANDUM OPINION

ROBERT F. HERSHNER, JR., Chief Judge.

Triad Financial Corporation, Movant, filed on March 31, 2006, its Objection to Confirmation of Chapter 13 Plan. Robert M. Brown, Respondent, filed a response on May 22, 2006. Movant's objection came on for a hearing on May 22, 2006. The Court, having considered the record, the stipulation of facts, and the arguments of counsel, now publishes this memorandum opinion.

The material facts are not in dispute. Respondent purchased a 2005 Pontiac Grand Prix (the "vehicle") on July 28, 2005. Respondent signed a Retail Installment Contract and Security Agreement in favor of the auto dealership. Respondent was to pay the amount financed, $21,499.93, by making seventy-two monthly payments. The annual percentage rate was 19.10 percent. The auto dealership assigned the Retail Installment Contract and Security Agreement to Movant.

Respondent filed a petition under Chapter 13 of the Bankruptcy Code on February 10, 2006. Respondent filed his proposed Chapter 13 plan on February 10, 2006. Respondent, in his proposed Chapter 13 plan, proposes to pay Movant as a secured creditor, $14,388 plus 7 percent interest by making monthly payments through his Chapter 13 plan. Respondent proposes to pay unsecured obligations, including the remainder of his obligation to Movant, in full without interest.

Respondent's vehicle is insured and Movant is listed as the loss payee. Respondent purchased the vehicle for his personal use. The vehicle was purchased 197 days before Respondent filed for bankruptcy relief. Movant's interest in the vehicle is secured by a perfected lien on the certificate of title.

Movant filed on March 7, 2006, a proof of claim asserting a secured claim in the amount of $22,227.73. No objection to Movant's claim has been filed. Movant contends that it should be paid the full amount of its claim plus interest at the contract rate of 19.10 percent. At the hearing on May 22, 2006, Respondent offered to pay Movant the amount of its claim without interest. Movant did not accept Respondent's offer.

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPC-PA") became effective, in relevant part, on October 17, 2005. Respondent's bankruptcy petition was filed on February 10, 2006, and is governed by BAPCPA.

Section 1325(a)(5) of the Bankruptcy Code, as amended by BAPCPA, provides in relevant part that the court shall confirm a proposed Chapter 13 plan if the plan provides that the holder of each allowed [1] secured claim will receive periodic payments which equal the present value of the secured claim. The last paragraph of section 1325(a) [2] provides in relevant part that for purposes of paragraph (5), section 506 of the Bankruptcy Code shall not apply to a claim that is secured by a purchase money security interest in a motor vehicle on a debt incurred within 910 days preceding the bankruptcy filing if the vehi-

---

1. Movant's claim is deemed allowed because no objection has been filed to its proof of claim. 11 U.S.C.A. § 502(a) (West 2004).

2. The last paragraph of section 1325(a) is sometimes referred to as the unnumbered paragraph or the hanging paragraph.

cle was acquired for the personal use of the debtor.[3]

Prior to BAPCPA's amendment of section 1325(a), a debtor could bifurcate an undersecured claim into a secured claim and an unsecured claim. The last paragraph of section 1325(a), as amended by BAPCPA, prevents bifurcation of certain undersecured claims.

■ Respondent, through his proposed Chapter 13 plan, proposed to bifurcate Movant's claim. The undisputed facts show that Movant's claim comes within the statutory provisions of the last paragraph of section 1325(a) and is protected from bifurcation. Respondent basically conceded this issue at the hearing on May 22, 2006. The Court is persuaded that Respondent cannot bifurcate Movant's claim. The Court is persuaded that Respondent must pay the allowed amount of Movant's claim if Respondent wants to retain the vehicle.

■ Respondent also contends that a claim that is within the statutory provisions of the last paragraph of section 1325(a) is not a "secured claim" for purposes of section 1325(a)(5). In *In re Murray*,[4] Judge Laney held that a claim protected by the last paragraph of section 1325(a) is a secured claim for purposes of section 1325(a)(5) and cannot be bifurcated. Judge Laney held that the creditor holding the claim is entitled to receive periodic payments which equal the present value of the secured claim. Judge Laney also held that the applicable interest rate for present value purposes is the interest rate mandated by the United States Supreme Court in *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004) (prime rate plus an adjustment for risk).

The Court is persuaded that *In re Murray* is a correct statement of the law and that this Court should follow *In re Murray*. The Court is persuaded that Movant's objection to confirmation of Respondent's Chapter 13 plan should be sustained.

An order in accordance with this memorandum opinion shall be entered this date.

---

3. Section 1325(a) provides in part:

§ 1325. Confirmation of plan
(a) Except as provided in subsection (b), the court shall confirm a plan if—
 . . .
(5) with respect to each allowed secured claim provided for by the plan—
 . . .
(B)
 . . .
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
 (iii) if—
 (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts;
 . . .

For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910–day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1–year period preceding that filing;
11 U.S.C.A. § 1325(a)(5)(B)(ii),(iii) (West 2004 & Supp 2006).

4. Ch. 13, 346 B.R. 237 (Bankr.M.D. Ga.2006). A copy of *In re Murray* is attached to this memorandum opinion. [Editor's Note: Opinion in *In re Murray* is separately published at 346 B.R. 237, 2006 WL 2080638].

ATTACHMENT

UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

In re Anthony LePhillips Murray, and Gail Yvette Murray, Debtors.

No. 05–48017.

## MEMORANDUM OPINION

This matter came before the Court for hearing on April 4, 2006, for confirmation of Debtors' Chapter 13 plan and the Objection to Confirmation filed by creditor Nuvell Financial Services Corp. (hereinafter, "Nuvell") on January 11, 2006. At the conclusion of the hearing, the Court took the issue of confirmation under advisement, particularly, to consider the meaning of the "hanging paragraph" of revised 11 U.S.C. § 1325(a)[1] added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (hereinafter, "BAPCPA"), and to determine whether Debtors' treatment of Nuvell's secured claim in Debtors' Chapter 13 Plan would be consistent with the provisions of the "hanging paragraph."

Based upon a review of the briefs submitted by the parties following the hearing, arguments of counsel, and the pertinent statutory and case law, the Court, for the reasons given below, holds that the treatment of Nuvell's secured claim in Debtors' Chapter 13 Plan is violative of § 1325(a)(*) and that Nuvell's objection is hereby SUSTAINED.

## FINDINGS OF FACT

On August 1, 2004, Debtors Anthony and Gail Murray purchased a 2003 Oldsmobile Alero automobile (hereinafter, the "vehicle") from Bill Heard Chevrolet Co. (hereinafter, "Bill Heard") pursuant to the terms of a retail installment contract (hereinafter, the "Contract"). Bill Heard assigned its interest in the Contract to Nuvell. The vehicle was acquired for the "personal, family or household"[2] use of Debtors. As evidenced by the Contract, the purchase of the vehicle included a $700 payment for a service contract, a documentary fee of $344, and a government certificate of title fee of $18. The vehicle is subject to a secured claim held by Nuvell. A Georgia Certificate of Title was issued on September 2, 2004, indicating Nuvell holds a first priority purchase-money security interest in the vehicle.

Debtors filed their petition for Chapter 13 protection on November 15, 2005.[3] Debtors purchased the vehicle within 910 days prior to filing their petition for bankruptcy. Nuvell filed a proof of claim on November 28, 2005 contending that the net amount due to Nuvell, as of the petition date, was $10,498.63. No objection to Nuvell's proof of claim was filed.

The scheduled value of the vehicle as of the date of Debtors' petition was $8,612.00. On December 19, 2005, Debtors proposed a Chapter 13 plan providing that the secured claim of Nuvell should be paid to the extent of $8,612.00 plus interest at 8% (percent) per annum, thus attempting to "cram down" the value of Nuvell's secured claim. On January 11, 2006, Nuvell objected to the confirmation of Debtors' pro-

---

1. Hereinafter, for ease of identification, the hanging paragraph of § 1325(a) will be referred to as "§ 1325(a)(*)."

2. *See* Retail Installment Contract at 1, attached to Brief for Debtors.

3. Debtors filed their petition after October 17, 2005, the effective date of the BAPCPA provisions germane to the issue before the Court.

posed plan on the basis that Nuvell's claim qualified under § 1325(a)(*) and could no longer be crammed down under § 506.

## DISCUSSION AND CONCLUSIONS OF LAW

The issue before the Court is whether Debtors can "cram-down" the lien of a secured creditor considering the terms of § 1325(a)(*) where the collateral is a motor vehicle, the motor vehicle was purchased by Debtors for personal use within 910 days of the filing of Debtors' petition, and the purchase price for the motor vehicle included the purchase of a service contract and a documentary fee. To also be considered by the Court, is the applicable post-petition interest rate to be applied to the repayment of secured claims qualifying under § 1325(a)(*).

### I. Qualification under BAPCPA § 1325(a)(*)

Although the ultimate issue of this inquiry is the meaning the Court will give to § 1325(a)(*), that issue cannot and should not be reached until it is determined that the claim of Nuvell qualifies for treatment under § 1325(a)(*). In order for a claim to qualify for treatment under § 1325(a)(*) the three following requirements must be met: (1) The creditor must have a purchase-money security interest; (2) The purchase-money security interest must be in a motor vehicle acquired for the debtor's personal use; and (3) The debt secured by the motor vehicle must have been incurred

within 910 days of the filing of the debtor's Chapter 13 petition.[4]

Although requirements (2) and (3) are clearly met, Debtors argue that Nuvell's claim does not qualify for treatment under § 1325(a)(*) because Nuvell does not hold a purchase-money security interest. Specifically, Debtors contend that because the debt was incurred not only for the purchase of the vehicle, but also for the purchase of an extended service contract and a documentary fee, the security interest of Nuvell is not a purchase-money security interest.[5]

The issue of whether the simultaneous purchase of an extended service contract and a motor vehicle prevents the purchase-money creditor from taking a purchase-money security interest in the motor vehicle was considered in the case of *In re Johnson*.[6] Like Debtors in the case at bar, the debtors in *Johnson* argued that a purchase-money security interest does not exist because the creditor is secured by more than the motor vehicle, therefore, § 1325(a)(*) does not apply.[7]

The court in *Johnson* was not persuaded by the debtors' argument and stated that there is no requirement in § 1325(a)(*) that a creditor be secured *only* by a motor vehicle.[8] The court went on to say that the latter portion of § 1325(a)(*) states that the Section also applies to any other collateral purchased one year before bankruptcy,[9] which was, in fact, the case in Johnson. The facts of this case do not, however, yield themselves to the application or use of the latter portion of § 1325(a)(*).[10]

---

**4.** 11 U.S.C. § 1325(a)(*) (2005).

**5.** Brief of Debtors at 14–20.

**6.** 337 B.R. 269 (Bankr.M.D.N.C.2006).

**7.** Brief of Debtors at 14–20. *See Johnson,* 337 B.R. at 272–73.

**8.** *Johnson,* 337 B.R. at 272–73.

**9.** *Id.*

**10.** Debtors signed the installment contract purchasing the vehicle on August 1, 2004, but did not file their Chapter 13 bankruptcy petition until November 15, 2005; a period longer than one year after the purchase had elapsed.

The Court concludes, in agreement with the reasoning and holding in *Johnson,* that the simultaneous purchase of a motor vehicle and an extended service contract, with the inclusion of a documentary fee, does not prevent a creditor from taking a purchase-money security interest in the motor vehicle. Debtors have provided no authority in support of an alternate conclusion other than the clearly distinguishable case of *In re Horn,*[11] which involved a multiple transaction scenario.[12] Nuvell's claim, therefore, qualifies for treatment under § 1325(a)(*).

## II. The Meaning of BAPCPA § 1325(a)(*)

The requirements for confirmation of a Chapter 13 plan are set forth in § 1325 of the Code. Subsection (a)(5) provides for the required treatment of "allowed secured claims."[13] With the enactment of BAPCPA on October 17, 2005, § 1325(a)(5) is now qualified by an unnumbered, hanging paragraph located at the end of subsection (a), § 1325(a)(*). Section 1325(a)(*) provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as de-

fined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing. . . . [14]

Section 506, as referenced in § 1325(a)(*), allows for the bifurcation of an under-secured creditor's claim into a secured and unsecured portion, with the result that a creditor's claim is allowed as secured only to the extent of the *value* of the collateral securing its debt. This process of bifurcation is referred to as "cramdown."

Prior to the enactment of BAPCPA and § 1325(a)(*), Chapter 13 debtors would, pursuant to § 1322(b)(2), modify the rights of a secured creditor through the cramdown procedure provided for in § 506(a)(1). The portion of the creditor's claim allowed as secured would be paid with interest, whereas the unsecured portion of the claim would be paid pro-rata with all other general unsecured claims. The Court must now determine the meaning of § 1325(a)(*) and that new section's effect on the cram-down procedures so often employed by debtors.

Debtors in this case argue that the language of § 1325(a)(*) that "section 506 shall not apply" means that claims qualifying under § 1325(a)(*) are not "allowed secured claims" as contemplated by § 1325(a)(5). If the claims are not "allowed secured claims," then they do not

---

**11.** 338 B.R. 110 (Bankr.M.D.Ala.2006).

**12.** The court in *Horn* held that § 1325(a)(*) simply prevented bifurcation under § 506. The court, however, ruled that the objecting creditor's claim was not a purchase-money security interest because the debtor did not incur the entire debt as all or part of the purchase price of the vehicle. Instead, the court noted, the debt was comprised of purchase-money for a vehicle along with four

subsequent cash advances. *Horn,* 338 B.R. at 113–14. The situation in *Horn* is clearly distinguishable from the facts in the case at bar.

**13.** 11 U.S.C. § 1325 (2005) (the subject matter of the Section was not changed with the enactment of BAPCPA).

**14.** 11 U.S.C. § 1325(a)(*) (2005).

fall within the purview of § 1325(a)(5)(B)(ii) and that section's requirement that each allowed secured claim be paid according to its present value.[15]

Since the effective date of BAPCPA in October of 2005, several courts across the nation have considered the meaning of § 1325(a)(*). All of the courts but one have held that § 1325(a)(*) "means only that the claims [the Section] describes cannot be bifurcated into secured and unsecured portions under § 506(a)."[16] This Court agrees with the majority.

In particular, the Court agrees with the reasoning and conclusion set forth in *In re Brown*.[17] There, the court considered arguments similar to the arguments now before this Court. The several debtors in *Brown* all purchased vehicles for personal use within 910 days before filing a Chapter 13 petition. Creditors with liens on those vehicles filed proofs of claim stating that the debts for the vehicles were 100% (percent) secured. No objections were made to the proofs of claim, nor was it argued that the vehicles were not purchased for personal use. The debtors' proposed plans that estimated the claims, listing them as "fully secured allowed claims," and pro-

posed repayment at 0% (percent) interest. The 910–day creditors objected to confirmation of the debtors' Chapter 13 plans, arguing that the creditors holding allowed secured claims should be paid the present value of their claims in accordance with § 1325(a)(5).

The court in *Brown* was not persuaded by the debtors' argument that § 1325(a)(*) prohibited application of § 506 and in so doing prevented 910–day claims under § 1325(a)(*) from being considered "allowed secured claims." The court did not agree with the debtors that § 1325(a)(5)(B)(ii)'s requirement that "allowed secured claims" be paid on the basis of the claim's present value did not apply to claims qualifying under § 1325(a)(*).[18]

The court in *Brown* stated, and this Court agrees, that if a debtor contends that without the operation of § 506 an "allowed secured claim" cannot exist, then that debtor "misunderstands the purpose and operation of § 506."[19] The discussion of this issue in *Brown* begins with a citation to the United States Supreme Court case of *Dewsnup v. Timm*[20] where the Supreme Court agreed with the argument that:

---

**15.** *See* Brief of Debtors at 6–7.

**16.** *See In re Brown*, 339 B.R. 818, 820 (Bankr. S.D.Ga.2006) (Dalis, J.). *See also Johnson*, 337 B.R. at 273 (Bankr.M.D.N.C.2006) (holding that § 1325(a)(*) prevents purchase-money security loans on vehicles purchased for the personal use of the debtor within 910 days of the filing of the petition from being stripped down in a Chapter 13 plan); *Horn*, 338 B.R. at 113 (holding that § 1325(a)(*) prevents bifurcation under § 506 of claims meeting the three requirements of § 1325(a)(*)); *In re Montoya*, 341 B.R. 41, 44 (Bankr.D.Utah 2006) (holding that the beginning phrase of § 1325(a)(*), "For purposes of paragraph (5)," requires that the court consider § 1325(a)(5) when contemplating confir-

mation; thus, a claim qualifying under § 1325(a)(*) is still an "allowed secured claim" and § 1325(a)(*) only prevents bifurcation under § 506). *But see In re Carver*, 338 B.R. 521 (Bankr.S.D.Ga.2006) (Walker, J.) (holding that a 910–day vehicle claim is neither an unsecured claim nor an allowed secured claim and that § 1325(a)(5) is not applicable to 910–day vehicle claims).

**17.** 339 B.R. 818.

**18.** *Id.* at 820.

**19.** *Id.* at 821.

**20.** 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

the words "allowed secured claim" in § 506(d) need not be read as an indivisible term of art defined by reference to § 506(a), *which by its terms is not a definitional provision.* Rather, the words should be read term-by-term to refer to any claim that is, first, allowed, and, second, secured.[21]

The court in *Brown* stated that "the relationship between § 506(a) and 'allowed secured claim' in § 506(d), [established in *Dewsnup],* also applies to the relationship between § 506(a) and 'allowed secured claim' in § 1325(a)(5) permitting bifurcation of an allowed claim under § 506(a) into secured and unsecured portions in contravention of nonbankruptcy law, nothing more."[22]   The Court agrees with *Brown* that it is unnecessary and inappropriate to "contort" § 506(a) into a definitional provision where other sections of the Code address whether a claim is "allowed" and/or "secured."[23]

As stated both in *Brown* and by counsel in briefs, § 502(a) determines whether a claim is deemed "allowed."[24]   Section 502(a) provides in relevant part: "(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects."[25] As in *Brown,* no objections have been filed

in this case to the Nuvell proof of claim. In accordance with § 502(a), therefore, the 910-day claim of Nuvell is deemed "allowed."

The Court must look to § 101(37) to determine whether a debt is "secured" by a lien.[26]   Section 101(37) provides: "The term 'lien' means charge against or interest in property to secure payment of a debt or performance of an obligation."[27] Like in *Brown,* there is no argument that Nuvell does not hold a valid lien against Debtors' vehicle that secures payment of the underlying debt.   As such, the claim of Nuvell is "secured."

In *Brown,* the court held that because the 910-day claims were deemed "allowed" under § 502(a) and "secured" under § 101(37), the claims were "allowed secured claims" and § 1325(a)(5) would apply to require payment of those claims on the basis of their present value.[28]   Regarding the 910-day claim of Nuvell in this case, this Court concludes likewise.

The Court is satisfied that the identification of a claim as "allowed" and "secured" would be sufficient to overcome Debtors' argument that § 1325(a)(5) would not apply to claims qualifying under § 1325(a)(*), but there are, however, other sound reasons why Debtors' argument must absolutely fail.   As pointed out in *In re Montoya,*[29] non-bankruptcy substantive law usually determines the existence of a

---

21.   *Id.* at 415, 112 S.Ct. 773 (emphasis added) (construing the relationship between § 506(a) and the phrase "allowed secured claim" in § 506(d), the Supreme Court agreed with this argument of the respondent and the United States stating that it was sensical).

22.   *Brown,* 339 B.R. at 821.

23.   *Id.*

24.   *Id. See* Brief of Debtors at 4–5;  Brief of Creditor at 5–6.

25.   11 U.S.C. § 502(a) (2005).

26.   *See Brown,* 339 B.R. at 821.

27.   11 U.S.C. § 101(37) (2005).

28.   *Brown,* 339 B.R. at 821.

29.   *Montoya,* 341 B.R. at 44.

creditor's claim, while the *valuation* of that claim is determined by § 506. Whether that claim is *secured* is a matter of contract and applicable perfection statutes.[30] This Court agrees with the conclusion reached in *Montoya* that "[a] creditor's secured status is not erased without any further adjudication merely because the hanging paragraph makes the § 506 valuation mechanism inapplicable to 910–day vehicle claims." [31]

In Montoya, it is also noted that the grammatical structure of § 1325(a)(*) supports the conclusion that § 1325(a)(5) is still applicable to claims qualifying under § 1325(a)(*). The hanging paragraph begins with the phrase: "For purposes of paragraph (5) ..." It should follow then that where a claim qualifies under § 1325(a)(*), a court must consider § 1325(a)(5) when contemplating confirmation.[32]

As pointed out in the case of *In re Turner*,[33] the conclusion that § 1325(a)(*) serves only to prevent the bifurcation of an allowed secured claim under § 506 is also strongly supported by the legislative history to § 1325(a)(*). A 2005 House Report on the new provisions of BAPCPA provides:

> **Protections for Secured Creditors.** S. 256's protections for secured creditors **include a prohibition against bifurcating a secured debt** incurred within the 910–day period preceding the filing of a bankruptcy case if the debt is secured by a purchase money security interest in a motor vehicle acquired for the debtor's personal use. Where the collateral consists of any other type of property having value, S. 256 prohibits bifurcation of specified secured debts if incurred during the one-year period preceding the filing of the bankruptcy case.[34]

Further, members of Congress dissenting to the enactment of BAPCPA also recognized:

> *[S. 256] would largely eliminate the possibility of loan bifurcations in chapter 13 cases.* Under current law a debtor is permitted to bifurcate a loan between the secured and unsecured portions. The debt is treated as a secured debt up to the allowed value of the property securing the debt. The remainder of the debt is treated as a nonpriority unsecured debt. Section 306 of [S. 256] prevents such bifurcation (including with regard to interest and penalty provisions) with respect to any loan for the purchase of a vehicle in the 910 days before bankruptcy, as well as all loans secured by other property incurred within one year before bankruptcy.[35]

Considering this legislative history, the grammatical structure of § 1325(a)(*), and the definitions of the terms "allowed" and "secured" found elsewhere in the Code, the Court holds that the only sound conclusion is that a claim qualifying under

---

**30.** *Id.*

**31.** *Id.*

**32.** *Id.*

**33.** *In re Turner*, NO. 05–45355, slip op. at 8 (Bankr.D.S.C. Mar. 31, 2006).

**34.** H.R. REP. No. 109–31(I) at 17 (2005), U.S.Code Cong. & Admin.News 2005, pp. 88, 103 (emphasis added). Note that "S. 256"

found in the portion of the House Report cited, refers to BAPCPA, which was introduced as Senate Bill 256.

**35.** H.R. REP. No. 109–31(I) at 554 (2005), *as reprinted in* E–2 COLLIER ON BANKRUPTCY at App. Pt. 10–903 (Lawrence P. King et al. eds., 15th ed. revised 2005) (emphasis added). *See Turner*, No. 05–45355, slip op. at 8.

§ 1325(a)(*) may be considered an "allowed secured claim" for purposes of § 1325 and would be, therefore, subject to the present interest requirement of § 1325(a)(5).

## III. Applicable Interest Rate

Although Debtors in this case do not, in the alternative, address the appropriate interest rate to be paid should the Court conclude that Nuvell's claim is an "allowed secured claim," the Court believes that for direction in this and in other cases concerning similar issues, the applicable post-petition interest rate should be discussed.

Under the authority granted in § 1322(b)(2), a Chapter 13 plan may "modify the rights of any creditor whose claim is secured by an interest in anything other than 'real property that is the debtor's principal residence.' " [36] This power to modify is, of course, subject to the requirement of § 1325(a)(5) that the secured creditor receive the present value of its claim as of the petition date. In *Till v. SCS Credit Corp.*,[37] the United Stated Supreme Court, considering § 1325(a)(5) and the interest to be paid on a secured claim bifurcated under § 506, held that the Section required payment of interest on the secured claim at a current rate determined by an adjustment from the prime rate based upon the risk of nonpayment.[38] The Supreme Court expressly rejected requiring the Chapter 13 plan to propose payment of the secured claim at the contract rate of interest.

In other cases concerning § 1325(a)(*), creditors have made the argument that with the enactment of BAPCPA and § 1325(a)(*), Till has been abrogated.[39] There is simply no basis for this contention. No provision of BAPCPA prohibits the modification of secured creditors' rights under § 1322(b)(2).[40] Had Congress intended to create an absolute safe-harbor for secured creditors holding claims qualifying under § 1325(a)(*), like it provided for home mortgages under § 1322(b)(2), Congress could have done so, but it did not.[41] Section § 1325(a)(*) neither addresses the issue of interest nor prohibits the modification of claims qualifying under that section.[42] Section 1325(a)(*) only says that § 506 is not available to bifurcate secured claims qualifying under that section. BAPCPA did not amend § 1322(b)(2) with its grant of leeway to amend; therefore, the right to do so still exists. Further, there is no mention of interest or of Till in any of the legislative history of the amendments to § 1325.[43] Clearly, therefore, *Till*, with its mandate regarding the payment of post-petition interest, is not abrogated. Secured claims qualifying under § 1325(a)(*) shall be paid at the interest rate set forth in *Till* so as to satisfy the present value requirement of § 1325(a)(5).[44]

---

**36.** *Till v. SCS Credit Corp.*, 541 U.S. 465, 475, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004).

**37.** 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787.

**38.** *Id.* at 478–79, 124 S.Ct. 1951. *See In re Fleming*, 339 B.R. 716, 721 (Bankr.E.D.Mo. 2006).

**39.** *See In re Robinson*, 338 B.R. 70, 74 (Bankr.W.D.Mo.2006); *In re Wright*, 338 B.R. 917, 919 (Bankr.M.D.Ala.2006); *Fleming*, 339 B.R. at 722–23 *In re Shaw*, 341 B.R. 543, 544

(Bankr.W.D.N.C.2006) *In re Pryor*, 341 B.R. 648, 649–50 (Bankr.C.D.Ill.2006).

**40.** *See Brown*, 339 B.R. at 822.

**41.** *See Wright*, 338 B.R. at 920.

**42.** *See Robinson*, 338 B.R. at 75;

**43.** *Robinson*, 338 B.R. at 75.

**44.** It should be noted that the vast majority of cases considering the interest rate issue have held, as this Court does, that a creditor whose

## CONCLUSION

It is, therefore, the holding of this Court that the security interest of Nuvell is in fact a purchase-money security interest qualifying for treatment under § 1325(a)(*). The Court further holds that § 1325(a)(*) serves only to prevent the bifurcation of a secured claim under § 506 and does not disqualify a claim from the status of an "allowed secured claim" for purposes of applying § 1325(a)(5) and its present value requirement. Lastly, the Court holds that the Supreme Court decision of *Till v. SCS Credit Corp.* was not abrogated by BAPCPA and that the interest requirement it mandates is applicable to claims qualifying under § 1325(a)(*).

JOHN T. LANEY, III, Bankruptcy Judge.

claim qualifies under § 1325(a)(*) is entitled to receive post-petition interest at a current rate determined by the prime rate adjusted for risk as set forth in *Till. See Johnson,* 337 B.R. at 273; *Robinson,* 338 B.R. at 74–75; *Wright,* 338 B.R. at 919–20; *Brown,* 339 B.R. at 822; *Fleming,* 339 B.R. at 724; *Shaw,* 341 B.R. 543, 546–47; *Pryor,* 341 B.R. 648, 650–51.