**In re Wendy W. MACON, Debtor.**

**C/A No. 07–03041–HB.**

United States Bankruptcy Court,
D. South Carolina.

Oct. 19, 2007.

---

Daniel A. Stone, Irmo, SC, for Debtor.

## ORDER

HELEN E. BURRIS, Bankruptcy Judge.

This matter comes before the Court on Creditor GMAC's objection to a Chapter 13 plan proposed by Wendy W. Macon (Debtor). GMAC claims a purchase money security interest in a Vehicle that Debtor purchased within the 910 days preceding her bankruptcy filing. GMAC contends that Debtor may not value its claim pursuant to 11 U.S.C. § 506(a)(1) and that its entire claim should be treated as a secured claim and paid in full, pursuant to the unnumbered paragraph found after 11 U.S.C. § 1325(a)(9) (also referred to as the flush language of this section or the hanging paragraph of § 1325(a)). After careful consideration of the evidence and legal arguments presented by the

parties, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L), and (O).

2. On December 11, 2004. Debtor purchased a 2004 Chevrolet Cavalier. She acquired the motor vehicle for her personal use.

3. Under the terms of the Retail Installment Sale Contract ("Sale Contract"), GMAC holds a perfected first lien on "1. The vehicle and all parts or goods installed in it; 2. All money or goods received (proceeds) of the vehicle; 3. All insurance, maintenance, service, or other contracts we finance for you; and 4. All proceeds from insurance, maintenance, service, or other contracts we finance for you."

4. The Sale Contract's "Itemization of Amount Financed" includes the following: Cash price of $15,494.00; Total down payment of $3000.85 (consisting of a net trade in after payoff to seller of $2500.85 plus $500 cash); Unpaid balance of $12,493.15; "Other Charges" totaling $3202.50 consisting of Government license and/or registration fees of $10, Government certificate of title fees of $15, to EasyCare for Service Contract $2279.00, to Capital Chevrolet for Gap Protection, $599.00, and to Capital Chevrolet for Administrative Fee, $299.50, The unpaid cash price minus the down payment plus the other charges led to the sum of $15,695.65 as the amount financed at 9.90% interest for 60 months.

5. On June 5, 2007, Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code, At the time of Debtor's filing, the principal balance that Debtor owed to GMAC was $10,869.38.

6. Under the terms of the Debtor's proposed Chapter 13 plan, Debtor proposed to pay only the $7200 replacement value of the vehicle, asserting that the obligation to GMAC was not entitled to treatment as a purchase money transaction. GMAC objected to the plan.

## DISCUSSION AND CONCLUSIONS OF LAW

The dispute in this case centers on the flush language of 11 U.S.C. § 1325(a):

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910–day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1–year period preceding that filing.

11 U.S.C. § 1325(a)(flush language).[1] The flush language of § 1325(a) prevents bifurcation of a creditor's secured claim (that is, § 506 does not apply) if the claim meets the criteria above. *In re Turner,* 349 B.R. 437, 442 (Bankr.D.S.C.2006). Debtor in this case contends that the inclusion of a service contract, gap insurance[2] and ad-

---

1. Several courts have adopted the designation "§ 1.325(a)(*)" when citing to the flush language. *See, e.g., In re Pajot,* 371 B.R. 139, 143 n. 2 (Bankr.E.D.Va.2007).

2. "GAP insurance is a form, of coverage offered to consumers that covers the shortfall between the applicable insurance coverage and any amount still owed in the event a vehicle is determined to be a total loss as a result of theft or damage." *Jones v. General Motors Acceptance Corp. (In re Jones),* No. 06–80150, 2007 WL 1725593, slip op. at *1

ministrative fee in the Sale Contract destroys the purchase money nature of the transaction, thereby negating the application of the flush language to this claim and entitling Debtor to bifurcate under § 506.

▮ Whether GMAC's security interest is a purchase money security interest is a matter of state law. *In re Matthews*, No. 07–01846–jw, slip op. at 5 (Bankr. D.S.C. Aug. 28, 2007) (citing *Rosen v. Associates Financial Services Co.*, 18 B.R. 723, 724 (Bankr.D.S.C.1981), *aff'd*, 17 B.R. 436 (D.S.C.1982)). The term "purchase-money security interest" under South Carolina law is set forth in S.C.Code Ann. § 36–9–103 (2006). This court recently analyzed the definition of purchase money security interest found therein:

> South Carolina adopted the revised version of Article 9 in 2001, which is codified at S.C.Code Ann. § 36–9–101 *et. seq.* (West 2003) (hereinafter the "U.C.C."). The U.C.C. provides that "[a] security interest in goods is a purchase money security interest: (1) to the extent that the goods are purchase money collateral with respect to that security interest." *See* S.C.Code Ann. § 36–9–103(b)(1) (West 2003). The term "goods" is defined as "all things that are moveable when a security interest attaches," which is a term that includes Debtor's vehicles. *See id.* § 36–9–102(44). "Purchase money collateral" refers to goods that secure "a purchase money obligation incurred with respect

to that collateral," *See id.* § 36–9–103(a)(1). A "purchase money obligation" is in turn defined as "an obligation of an obligor ... for value given to enable the debtor to acquire rights in or the use of the collateral if the Value is in fact so used." *See id.* § 36–9–103(a)(2). *Thus, a security interest is purchase money if a debtor incurs debt to obtain certain goods and the creditor lends money to the debtor to enable the debtor to obtain those goods.*

*In re Matthews*, slip op. at 5 (emphasis added).[3] Official Comment 3 to S.G.Code Ann. § 36–9–103 states in part:

> The concept of "purchase-money security interest" requires a close nexus between the acquisition of collateral and the secured obligation. Thus, a security interest does not qualify as a purchase-money security interest if a debtor acquires property on unsecured credit and subsequently creates the security interest to secure the purchase price.

S.C.Code Ann. § 36–9–1.03, Official Comment 3.

In a similar case involving an extended service contract, documentary fee and government certificate of title fee, a bankruptcy court found that the addition of these items did not destroy the purchase money nature of the obligation. *In re Murray*, 352 B.R. 340, 349 (Bankr.M.D.Ga.2006)[4] (reconsidering *In re Murray*, 346 B.R. 237 (Bankr.M.D.Ga.2006)).[5] That court em-

---

(Bankr.N.D. Ala. June 13, 2007) (citing *Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1062 n. 2 (11th Cir.2004)).

**3.** In *Matthews*, this Court determined that "the mere presence of certain contractual clauses" did not destroy the purchase money nature of that creditor's security interest. Slip. op. at 5–6. There, cross-collateralization clauses and future advance, clauses were contained in the purchase agreement but were not exercised. Whether the addition of gap insurance, a service Contract and fees

destroys the purchase money nature is an issue of first impression in this Court.

**4.** This opinion is a reconsideration of *In re Murray*, 346 B.R. 237 (Bankr.M.D.Ga.2006). The court on reconsideration amended its discussion but did not change its original holding.

**5.** The court looked to state law to determine whether the creditor's interest is purchase-money security interest. The provisions in question, O.C.G.A. § 11–9–103(a) and (b), are

phasized the word "price" in the definition of the term "purchase money obligation" stating that "[i]f the cost of the three items can be considered part of the 'price' of Debtors' vehicle, then [the creditor] would have a purchase money security interest in the vehicle." 352 B.R. at 346–47. Further, courts have found that the existence of other "collateral" in addition to the motor vehicle, such as insurance, service and similar contracts, does not render the hanging paragraph inapplicable; *In re Johnson*, 337 B.R. 269, 272–273 (Bankr. M.D.N.C.2006). *See also In re Brown*, 346 B.R. 246, 251 (Bankr.M.D.Ga.2006).

Contrary to *Murray*, another bankruptcy court found that insurance deficiency and extended warranty contracts "are not costs of acquiring the vehicle" and thus the charges for these items were not part of the purchase money security interest in the vehicle. *In re White*, 352 B.R. 633, 639 (Bankr.E.D.La.2006).[6] *See also In re Price*, 363 B.R. 734, 741 (Bankr.E.D.N.C. 2007) (citing *White* and stating that gap insurance was "neither mandatory, a com-

ponent of the loan agreement, nor a value-enhancing add-on, and thus dissimilar to the examples listed in" Comment 3, and therefore gap insurance was not part of the purchase price of the collateral.)[7]

The Court finds the reasoning of the *Murray* court more persuasive. The items in question in this case appear to have a sufficient nexus with the price of the vehicle, even if they were purchased voluntarily or the charges there for ultimately paid to a third party, to allow the entire debt to retain its purchase money status. The transaction in question was the purchase of a car. The Debtor purchased this vehicle, paid certain necessary fees and costs, and elected additional items as part of the transaction to protect arid maintain the vehicle. These additional charges added value for the Debtor to the consideration received and have no value whatsoever unless incorporated into the purchase of this Vehicle. All of those items were rolled into one contract, by reference or incorporation, and financed to assist this Debtor in the ultimate goal of

---

identical to S.G.Code Ann. § 36–9–103(a) and (b).

**6.** Under La.Rev.Stat. Ann. § 10:9–103(f) (2002) to the extent that purchase-money collateral also secures an obligation that is not a purchase-money obligation, the purchase-money security interest does not lose its status. Accordingly, in *White*, the charges attributable to the insurance deficiency and extended warranty contracts were excluded from the secured claim, leaving the price of the vehicle to be paid under the terms of § 1325(a)(5) 352 B.R. at 645.

**7.** In the middle is the recent case of *In re Pajot*, 371 B.R. 139 (Bankr.E.D.Va.2007). At issue were gap insurance and a service contract. With regard to extended warranties and service contracts, that court relied on *Murray* and *Johnson* to hold that an extended warranty of service contract "is included as part of the purchase-money security interest." *Id.* at 155. The court analyzed Va.Code Ann.

§ 8.9A–103 and the "close nexus" requirement set forth in Comment 3 to determine that the charges for these items "have a nexus close enough to the acquisition of a new vehicle to allow their inclusion as a part of the purchase-money security interest." *Id.* As to gap insurance, however, the *Pajot* court noted that it had "not been presented with a conflict of authority regarding the treatment of gap insurance." *Id.* Finding no authority to the contrary, the court followed *Price* and *White* to hold that gap insurance is not a component of the purchase-money security-interest. *Id.* That court, however; had been faced with a dearth of argument as to extended warranties and gap insurance. Rater, the focus of the parties' arguments in that case had been the effect of negative equity. The court suggested that it might hold differently in the future: "Where thoroughly addressed by future cases, this court may revisit, the inclusion or exclusion of these components of a vehicle financing transaction in the purchase-money security interest." *Id.*

taking the car home and protecting her purchase. On these facts, there is a sufficient nexus with the price of the vehicle so as not to destroy the purchase money nature of GMAC's security interest. The amounts financed in this contract were "all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral" and there is no evidence that the value given by the Debtor was not applied in accordance with the Debtor's intentions. *See* S.C.Code Ann. § 36–9–103(a)(2).

There is no evidence before the Court that GMAC's secured claim is anything other than a purchase money security interest and, therefore, the hanging paragraph of § 1325(a) prevents the Debtor from utilizing § 506 to value the collateral and strip down the lien. Therefore, GMAC's objection is sustained and confirmation of the plan is hereby DENIED;