**In re James Michael VINSON and Darla Jean Vinson, Debtors.**

**No. 07–04893–HB.**

United States Bankruptcy Court, D. South Carolina.

Jan. 25, 2008.

---

Sharon K. Butler, Spartanburg, SC, for debtors.

### ORDER ON OBJECTION TO CONFIRMATION OF PLAN

HELEN E. BURRIS, Bankruptcy Judge.

This matter comes before the Court to determine whether the financing of negative equity as part of a vehicle purchase loan destroys the purchase-money nature of the lender's security interest, making the flush language of 11 U.S.C. § 1325(a) inapplicable.

#### Findings of Fact

1.  Bank of America, N.A., ("Lender") holds a claim secured by a first lien on Debtors' 2006 Kia Sedona motor vehicle ("Vehicle") in the amount of Twenty-six Thousand Two Hundred Thirty-five and 93/100 ($26,235.93) Dollars as of September 11, 2007 with contractual monthly payments of $528.71 for a 72–month term. The contract rate of interest is 6.84% per year.

2. The Retail Installment Contract for the purchase of the Vehicle is dated February 23, 2006. The $31,151.42 "Amount Financed" includes the Vehicle cash price of $24,563.42 and negative equity of $6,300, as well as filing fees and document fees.

3. Debtors' proposed Chapter 13 plan asserts that the value of the Vehicle is $17,725.00, and proposes to pay $423.00 per month until the value, plus 8.5% interest, is paid during the fifty-month term of the proposed plan. The remainder of the debt is to be paid as a general unsecured claim.

4. Lender objects to the plan and asserts that its entire claim is a purchase-money obligation secured by a purchase-money security interest in the Vehicle and, pursuant to the flush language of § 1325(a), it cannot be valued under § 506.

### Conclusions of Law

■■■ Section § 1325(a) provides that a claim is not subject to § 506 valuation if the creditor

> has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle ... acquired for the personal use of the debtor....

11 U.S.C. § 1325(a) (flush language). The Bankruptcy Code does not define "purchase-money security interest." Therefore, the Court must look to state law definitions. See In re Macon, 376 B.R. 778, 780 (Bankr.D.S.C.2007); In re Matthews, 378 B.R. 481, 486 (Bankr.D.S.C. 2007).

S.C.Code Ann. § 36–9–103(a)(1) defines "purchase-money collateral" as "goods or software that secure a purchase-money obligation incurred with respect to that collateral." [1] Under S.C.Code Ann. § 36–9–102(44) "[g]oods means all things that are movable when a security interest attaches." S.C.Code Ann. § 36–9–103(a)(2) defines a "purchase-money obligation" as "an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used." Official Comment 3 to § 36–9–103 provides:

> As used in subsection (a)(2), the definition of "purchase-money obligation," the "price" of collateral or the "value given to enable" includes obligations for expenses incurred in connection with acquiring rights in the collateral, sales taxes, duties, finance charges, interest, freight charges, costs of storage in transit, demurrage, administrative charges, expenses of collection and enforcement, attorney's fees, and other similar obligations.

> The concept of "purchase-money security interest" requires a close nexus between the acquisition of collateral and the secured obligation. Thus, a security interest does not qualify as a purchase-money security interest if a debtor acquires property on unsecured credit and subsequently creates the security interest to secure the purchase price.

S.C.Code Ann. § 36–9–103, Official Comment 3. Interpreting this language, this Court previously held in Macon that the inclusion of financing for a service contract, gap insurance and an administrative fee in a vehicle sale contract did not destroy the purchase-money nature of the transaction. 376 B.R. at 783.[2]

---

1. This code section is part of South Carolina's Uniform Commercial Code ("UCC"), S.C.Code Ann. §§ 36–1–101 to 36–11–108 (2007).

2. A number of cases cited by Debtors in sup-

Bankruptcy courts in other states have used the same analysis the Court employed in *Macon* to determine that financing negative equity on a trade-in vehicle does not destroy the purchase-money nature of the transaction, and the national trend appears to be headed in this direction. *See General Motors Acceptance Corp. v. Peaslee,* 373 B.R. 252, 262 (W.D.N.Y.2007); *Graupner v. Nuvell Credit Corp.,* No. 4:07–CV–37CDL, 2007 WL 1858291, at *2 (M.D.Ga. June 26, 2007); *In re Schwalm,* 380 B.R. 630, 634– 35 (Bankr.M.D.Fla.2008); *In re Weiser,* 381 B.R. 263, 268–69 (Bankr.W.D.Mo. 2007); *In re Wall,* 376 B.R. 769, 771 (Bankr.W.D.N.C.2007); *In re Cohrs,* 373 B.R. 107, 109–110 (Bankr.E.D.Cal.2007); *In re Petrocci,* 370 B.R. 489, 504 (Bankr. N.D.N.Y.2007).

This Court takes note that *Graupner* and *Peaslee* are the only published district court opinions which have addressed this issue.[3] The *Graupner* court interpreted language from Georgia's version of the UCC, which is identical to the South Carolina UCC and found that the "price" of the collateral included the negative equity because the vehicle trade-in was "an integral part of the sales transaction" and "affected the ultimate price that was paid" for the new vehicle:

This close nexus between the negative equity and this package transaction supports the conclusion that the negative equity must be considered as part of the price of the collateral. Accordingly, the Court finds that the Creditor has a purchase-money security interest for the full amount of its debt.

*Graupner,* 2007 WL 1858291, at *2 (footnote omitted). Similarly, in *Peaslee,* the district court reversed the decision of the bankruptcy court and found that the unpaid balance on a trade-in vehicle is part of the purchase price of the new vehicle and is entitled to the status of a purchase-money security interest. 373 B.R. at 259– 60. In interpreting an Official Comment to New York's UCC identical to Official Comment 3 of S.C.Code Ann. § 36–9–103, the *Peaslee* court observed that financing negative equity could be considered an "expense" incurred in connection with acquiring rights in the new vehicle. *Id.* at 258–59. The *Peaslee* court stated that since the buyer and seller agreed that the payoff on the trade-in was an integral part of the transaction for the purchase of the new vehicle, it was difficult to view it as anything other than an expense. The court also noted that interpreting the contract in this manner effectuated the agreement of the parties.

---

port of their position are inconsistent with this Court's decision in *Macon* that financing gap insurance, administrative fees and a service contract does not destroy the purchase-money nature of the transaction. All of the cases cited by the Debtors applying the transformation rule and a number of the cases applying the dual status rule hold that financing gap insurance destroys the purchase-money nature of the transaction because gap insurance is not part of the purchase price. *See In re Blakeslee,* 377 B.R. 724, 729 (Bankr. M.D.Fla.2007); *In re Pajot,* 371 B.R. 139, 155 (Bankr.E.D.Va.2007); *In re Price,* 363 B.R. 734, 741 (Bankr.E.D.N.C.2007).

3. The only United States circuit court of appeals to address the meaning of the flush language of § 1325(a) is the Seventh Circuit in *In re Wright,* 492 F.3d 829 (7th Cir.2007). This case does not address negative equity, but it is notable for its emphasis on effectuating the terms of the contract between the parties in its interpretation of the flush language. *See Peaslee,* 373 B.R. at 262. The court held that a debtor could not surrender collateral to the creditor in full satisfaction of the creditor's claim because it would be a breach of the contract between the parties, which provided that the buyer would be liable for any deficiency upon seizure and sale of the vehicle.

The analysis employed in *Graupner* and *Peaslee* is consistent with and is a logical extension of *Macon*. The negative equity was an item rolled into the contract and financed to assist the Debtors in the ultimate goal of taking the car home, and it did not destroy the purchase money nature of the debt.

This result is also consistent with the legislative history of the flush language and reflects Congress's intent to protect certain secured creditors under § 506. In *In re Turner*, 349 B.R. 437 (Bankr.D.S.C. 2006), this Court analyzed the legislative history of the flush language and found that it reflects that Congress intended to favor secured creditors in this provision:

> *Protections for Secured Creditors.* S.256's protections for secured creditors include a prohibition against bifurcating a secured debt incurred within the 910–day period preceding the filing of a bankruptcy case if the debt is secured by a purchase money security interest in a motor vehicle acquired for the debtor's personal use. Where collateral consists of any other type of property having value, S.256 prohibits bifurcation of specified secured debts incurred during the one-year period preceding the filing of the bankruptcy case.

H.R.Rep. No. 109–31, pt. 1, at 17 (2005), *as reprinted in* E–2 COLLIER ON BANKRUPTCY at App. Pt. 10–268 (Lawrence P. King et al. eds., 15th ed. Revised 2005). Members of Congress dissenting from enactment of the S.256 also recognized that

> [S.256] would largely eliminate the possibility of loan bifurcations in chapter 13 cases. Under current law a debtor is permitted to bifurcate a loan between the secured and unsecured portions. The debt is treated as a secured debt up to the allowed value of the property securing the debt. The remainder of the debt is treated as a non-priority unsecured debt. Section 306 of [S.256] prevents such bifurcation (including with regard to the interest and penalty provisions) with respect to any loan for the purchase of a vehicle in the 910 days before bankruptcy, as well as all loans secured by other property incurred within one year before bankruptcy.

H.R. REP. No. 109–31, pt. 1, at 554 (2005), *as reprinted in* E–2 COLLIER ON BANKRUPTCY at App. Pt. 10–903 (Lawrence P. King et al. eds., 15th ed. Revised 2005).

*In re Turner*, 349 B.R. at 441–42.

The Court finds that Lender has a purchase-money security interest in the Vehicle as defined by state law and therefore the flush language of § 1325(a) applies. Lender's objection to the plan is sustained. The Debtors have ten (10) days to file a new plan consistent with this decision.

**IT IS SO ORDERED.**