## No. 10,854.

### HALEY, ET AL. *v.* AUSTIN, ADMINISTRATRIX.

Decided February 4, 1924.

Proceeding involving the allowance of a claim against an estate. Claim disallowed.

### *Affirmed.*

1. EXECUTORS AND ADMINISTRATORS—*Claims—Renewal Notes.* Renewal notes given by the administratrix of an estate for a debt existing at the time of the death of the decedent, do not change the character of the original indebtedness, a claim for which not being presented within the time prescribed, is barred by the statute.

2. *Final Orders.* Orders for the renewal of notes by the administratrix of an estate, are not final judgments in the sense that they are not subject to modification or vacation by the court before the close of administration.

3. *Renewal Notes—Effect.* Renewal notes given by an administratrix for an indebtedness existing before the death of the intestate, do not create an indebtedness against the estate.

4.    *Statute of Nonclaims—Waiver.* An administratrix cannot waive the statute of nonclaims, nor' can the court toll the statute by authorizing the renewal of an outlawed original debt.

5.    BILLS AND NOTES—*Renewals.* Where a note is given merely in 'renewal of another, and not in payment, the renewal does not extinguish or change the original debt, and as a general rule the holder is entitled to the same rights and remedies as if proceeding on the original note.

   Whether or not the new note extinguishes the original debt depends upon the circumstances and the intent of the parties.

6.    EXECUTORS AND ADMINISTRATORS—*Renewal Notes—Mortgage.* The holder of a renewal note given by an administratrix for a debt against the estate, which is barred by the statute of nonclaims, is not entitled to a foreclosure of a chattel mortgage securing the same.

7.    *Chattel Mortgage—Foreclosure.* Section 5344, C. L. '21, concerning foreclosure · of mortgages against estates, held conclusive against the foreclosure of a chattel mortgage given by an administratrix to secure renewal notes for an indebtedness barred by the statute of nonclaims.

8.    CHATTEL MORTGAGES—*Administrators.* The unauthorized giving of a chattel mortgage by an administrator, confers no right of property on the mortgagee.

9.    APPEAL AND ERROR—*Parties—Harmless Error.* In the hearing of a claim against the estate of a deceased person, interested parties and creditors should be brought in; but error in this respect is harmless where the rights of the absent parties are not affected by the judgment.

*Error to the County Court of Garfield County, Hon. J. W. Bell, Judge.*

Mr. C. W. DARROW, for plaintiffs in error.

Mr. J. W. DOLLISON, Mr. C. W. FULGHUM, for defendants in error.

*Department Three.*

. MR. JUSTICE CAMPBELL delivered the opinion of the court.

NOVEMBER 12, 1923, plaintiffs in error, a copartnership, as claimants, filed in the county court of Garfield county their claim against the estate of Josiah C. Austin, deceased, aggregating about $16,500, represented by three promissory notes executed by the administratrix and bearing date May 19, 1923, payable to claimants 180 days after date, which notes were secured by chattel mortgage given by the administratrix under authority of the court, upon certain live stock, and the hay crop of 1923 growing on 120 acres of land. In the instrument filed, verified by one of the partners, is a statement that on the day of the filing, and before the claim was tendered, the administratrix served a written notice upon claimants that she thereby surrendered possession to, and the same was received by, them of the live stock and hay crop included in the mortgage, for application on the indebtedness represented by the notes, which action on the part of the administratrix the claimants say made the notes due and payable at once and was, in effect, an agreement by which foreclosure forthwith could be made. The claimants asked an allowance of the alleged indebtedness represented by the notes, as a claim against the estate, and for an order of court permitting a foreclosure of the chattel mortgage. Upon final hearing, in which the claimants and the administratrix were represented by counsel, the court, on November 16th, disallowed the claim and refused its permission for the foreclosure. The court made a finding that the administratrix, without securing authority therefor, executed a mortgage including the 1923 hay crop. A few days thereafter she formally applied, in writing, for authority to execute such a mortgage, including both live stock and the hay crop. Authority was thereupon given to mortgage the live stock, but not the hay crop. The court held the mortgage void as to the hay, and as the evidence disclosed that claimants had taken possession under their chattel mortgage upon voluntary surrender thereof by the administratrix, no order would be, or was, made concerning the mortgage so

far as it related to the live stock. We are now asked to set aside the judgment.

The record shows an unusual and an anomalous procedure, which may be due, in part, to the fact that the administratrix and the claimants seem to have conducted proceedings themselves and without aid of legal counsel, until after the administratrix had despaired of paying debts of the estate and after the claimants had made their own case in their own way. It sufficiently appears from the record, however, that the debt represented by these notes signed by the administratrix, was contracted by the intestate during his lifetime, and that it was secured by a chattel mortgage upon his live stock and the crop of hay then growing upon his lands. The date of the intestate's note or notes and chattel mortgage is not shown. Letters of administration were granted to Fannie Austin as administratrix of the estate November 18, 1918, her husband having died on November 10. She qualified on the same day. The adjustment day for filing of claims was fixed for January 28, 1919, and the proper statutory notice was published. The claimants, who were the payees in these notes given by Mr. Austin, did not appear on the adjustment day and have never appeared in the county court, or filed for allowance a claim represented by, or based upon these original notes. Why they did not is not specifically disclosed by the evidence, but probably they had no intention of filing their claim under the fifth subdivision of section 5331, C. L. 1921, (which provides that, to be payable out of general assets, all debts and demands of whatever quality shall be filed in the county court within one year from the granting of letters of administration and, if allowed, shall compose the fifth class), but, in lieu thereof, having a mortgage which they deemed equivalent to the value of the amount of the notes, they were relying entirely upon that security and did not intend to have their claim established as a debt against the estate, to be paid in whole or in part out of its unincumbered assets. This purpose is indicated by further and later proceedings by them which

we proceed to recount. First it should be said that the original notes given by Austin named Haley Brothers as the payees, who then constituted the firm which afterwards was dissolved or succeeded by the firm of Haley & Hollis, claimants here.

On June 10, 1920, more than one year after adjustment day, the administratrix addressed a letter to the judge of the county court stating that it was necessary for the interests of the Austin estate that the intestate's note of $19,000 to Haley Brothers, maturing June 19, 1920, be renewed in that sum, together with interest, and that the renewal papers should be drawn in favor of Haley & Hollis, their successors, and requested, in the letter, that the judge grant her authority to make and sign as administratrix renewal thereof. On June 19, 1920, the court, finding that it was for the best interest of the estate that the renewal of such date should be made, ordered the administratrix to renew the same, and apparently the intention, which was carried out, was to effect renewals by giving new notes signed by the administratrix. Authority was also given to renew the renewal note, from time to time, if it became necessary for the best interest of the estate. The administratrix thereafter and upon order of the court, in responses to her applications, on June 14, 1921, made a second renewal note for the same reason, and on December 1, 1922, a third renewal, and on May 21, 1923, a fourth renewal. These three renewal notes of the fourth series were secured by a chattel mortgage and they constitute the claim presented to, and disallowed by, the order and judgment of the court, which we are now reviewing.

The claimants contend that the presented claim or debt was not contracted by the intestate in his lifetime, but that it is an original debt, created as the result of the acts of the administratrix in asking for, and obtaining authority of the court to make, and making, the renewals. They insist it is the same as a loan directly to the administratrix, a debt at that time contracted by her under authority

of the court. Hence, they say there is no statutory impediment in the nature of the nonclaims statute, to preclude allowance of these notes as a claim against the estate and a foreclosure of the chattel mortgage securing the same. The record does not bear out this contention either as to the facts or the law. It is clearly established that the original debt was contracted by the intestate and that the same, upon his death, constituted, and still remains, if it is enforcible at all, a claim or demand against the estate. The claimants might have presented this claim for allowance within the period prescribed by our statute of nonclaims hereinabove cited. They failed to do so, and, therefore, in so far as concerns their right to have it satisfied out of property of the estate other than that included in the securing mortgage, if such mortgage was made, is barred by the statute. There is no explanation why the claim based upon the original notes was not filed for allowance, and no excuse offered or given for the failure to do so. As we have said, probably it was because the claimants intended to rely solely upon the original mortgage and orders of the court permitting successive renewals. The trial court was familiar with its records. These various orders of renewals were not final judgments in the sense that they were not subject to modification or vacation by the court before the close of administration. If the indebtedness represented by the first of the renewal notes, signed by the administratrix, was at that time incurred for any legitimate purpose and authorized by the court, the judge who presided at the trial below would have been cognizant of it. He had the power to set aside or vacate these renewal notes, if made by mistake, or if contrary to the statute. Having disallowed the claim because it was barred by the statute is quite conclusive evidence that the court knew, and so found, that the administratrix did not borrow money, and had no such power, during the administration; and that the original debt was incurred by the intestate in his lifetime, and that all these renewal notes were mere renewals of a pre-existing debt and did not extinguish the

same.    Whether or not all of these renewal notes were secured by chattel mortgage is not entirely clear, and it is not important; but the fourth renewal notes involved here were secured by a chattel mortgage and it would seem from the record that each one of the renewal notes was likewise secured.

Such being the undisputed facts, the trial court in its judgment of disallowance was right.   Neither one nor all of these renewals constituted the creation of an indebtedness against the estate.   The most that can be said about them is that they constitute a recognition by the administratrix and the court of the existence of a pre-existing secured indebtedness of the intestate.   We do not understand that it is competent for the administratrix to waive the statute of nonclaims, or that the court may toll the statute of nonclaims by authorizing a renewal of an outlawed original debt.   "Where a note is given merely in renewal of another note and not in payment, the renewal does not extinguish the original debt nor in any way change the debt except by postponing the time for payment; and as a general rule the holder is entitled to the same rights and remedies as if he was proceeding on the original note." 8 C. J. p. 443, Section 656.   See also sections 793 to 796. Of course the parties may, by giving a new note for an old one, thereby extinguish the original debt.   Whether or not they do so depends upon various circumstances and their intent.   There is not the slightest evidence in this record that, in the giving of these new notes by the administratrix under the authority of the court, there was any intent that the former note or the original debt was thereby extinguished or paid.   The application in each instance by the administratrix was for "renewal," not to give a new note in payment, and it is doubtful, although it is not necessary definitely so to decide, if the court or the administratrix, or both, as against creditors whose claims had been allowed, would have the power thus to extinguish the original debt by giving new notes, after the original debt has been barred by the statute of nonclaims, and thus

put the payee or holder of the new obligation in a position where he could or might have the right to demand an approval of his claim upon such new instrument, to be payable out of the unincumbered general assets of the estate. These successive renewal notes, including the last and fourth series, which were disallowed, were not given to liquidate the original debt. That debt, if it be a debt at all against the estate, remains unextinguished.

This debt, being barred by the statute of nonclaims, in so far as the right to satisfaction out of estate property not included in the chattel mortgage is concerned, it necessarily follows that the claimants were not entitled to a foreclosure of the mortgage securing the renewal notes. The note is the principal thing, the mortgage merely an incident. Were it otherwise, under section 5344 C. L. 1921, the court, in which administration is had, can not grant permission or authority to a claimant to foreclose a mortgage securing an indebtedness of an estate, unless the claim for such indebtedness shall have first been proven and allowed by the court. There has been no allowance by the court of any debt of the estate. This is conclusive against the foreclosure sought.

There is a proviso to the fifth clause of section 5331 as follows: "That any claims secured by valid mortgage, * * * may be filed and allowed after the expiration of one year from the granting of letters, and before the final settlement of said estate or the outlawing of said claim, to be in such case satisfied only out of the land or other property upon which the claim is secured." This proviso is not discussed by either of the parties. The reason therefor would be merely guess work on our part. The construction as to the meaning, force and effect of this proviso, so far as it applies to the facts before us, or as to the facts that might appear in some other proceeding, should not now be made, or forecast, since we have not been asked to do so, and neither party bases any right upon it in their briefs.

In her written notice to the claimants, holders of the

chattel mortgage, the administratrix says that she surrenders possession of the property included therein, and declines further to feed or care for the live stock included in the mortgage, and that she has not the means properly to care for and feed the same, and for that reason surrenders possession of the live stock to the mortgagees, to be by them disposed of as the chattel mortgage provides. As the court made no order as to the live stock included in the mortgage, the rights of the claimants thereto are not involved upon this review, and we express no opinion with respect to the same. The court was unquestionably right in holding that the inclusion in the mortgage by the administratrix of the hay crop of 1923 was unauthorized and, therefore, the claimants have no right thereto.

It appears from the evidence offered by the claimants that other claims to the amount of about $2,000, in favor of other creditors, had been allowed against the estate. Although the court rejected this evidence, we say that the court ought not to have entered upon a hearing of the issues raised below without requiring the parties to bring in the creditors and all others interested in the estate. But its error in that respect is harmless, both as to claimants and other creditors. The judgment here entered, so far as it goes, is in the interest of all of the creditors of the estate, except the mortgagee claimants, and probably would not be objected to by the general unsecured creditors; but if judgment had been as prayed, it would have been a useless proceeding so far as concerns creditors not brought in.

This judgment must be affirmed. In doing so the rights of the claimants, if any they have, under the proviso of subdivision 5, section 5331, or on other grounds, are not to be considered as determined on this review. If claimants still hold the original note or notes given by the intestate in his lifetime to Haley & Haley, which, and not the renewal notes, constitute the only debt against the estate, if any, they are at liberty, if they see fit to do so,

at any time before final settlement of the estate, or before the outlawing of their claim, and unaffected by the judgment in this case, to file for allowance their claim based thereon, and ask for foreclosure of the mortgage, if any, securing the original notes. We must not be understood as indicating any opinion as to whether or not such a filing may now be legally made. We merely restrict our decision to the facts in the record before us, and say that upon this record the judgment, disallowing the series of fourth renewal notes as a claim against the estate, and refusing permission to foreclose the mortgage securing the same, was right and can not again be questioned. The rights, if any, of claimants to the live stock, under the chattel mortgage, were not decided in this case. Only in a proceeding under the proviso mentioned, or in some other proper and appropriate suit, or proceeding, where all interested parties are before a court, should this issue, not determined herein, be litigated and settled.

Judgment affirmed.

MR. CHIEF JUSTICE TELLER and MR. JUSTICE SHEAFOR concur.