No. 18,818.

ADJUSTMENT BUREAU, INC. *v.* WILLIAM H. ROGERS.
(354 P. [2d] 605)

Decided August 2, 1960.

Mr. John R. Wall, for plaintiff in error.

Messrs. Kettelkamp, McGrath & Vento, for defendant in error.

*En Banc.*

Mr. Justice Doyle delivered the opinion of the Court.

The parties will be referred to by name. Adjustment Bureau, Inc. was plaintiff in the trial court and Rogers was defendant. The action was commenced in the County Court of Pueblo County on September 24, 1957. The complaint demands a judgment on a promissory note in the amount of $841.50 dated December 24, 1956. It is alleged that the defendant was in default and further alleged the balance owing was $418.00, together with attorneys' fees in the amount of $139.00 and interest at the rate of 6 per cent.

The evidence at the trial disclosed that Rogers, who earned approximately $350.00 a month, had agreed to pay $85.00 a month for an extensive course of dancing

lessons at the Arthur Murray Dance Studios. At the completion of the course of lessons not only had Rogers not learned to dance but he also found himself indebted to the Arthur Murray Dance Studios in the amount of $765.00 and in default on his payments. This account was assigned to Adjustment Bureau, Inc. At the request of Adjustment Bureau, Inc., Rogers executed Exhibit A, the instrument in suit, by the terms of which he promised to pay Adjustment Bureau the sum of $841.50, $765.00 of which was principal and the balance of which was interest in advance. The action is on this latter "Agreement" or note. The evidence fails to disclose any formal assignment of the original note by Arthur Murray Studios. However, the plaintiff introduced this instrument, together with the instrument which was executed to the Adjustment Bureau, Inc. as payee, and the court received both documents in evidence. The original note, Exhibit B, made no provision for attorneys' fees. This was a contract to take dance lessons which was demoninated a "non-cancellable negotiable contract," but it contained the following provision, among others:

"Upon my failure to pay any installment when due, the unpaid balance of this contract, at your option, shall become immediately due and payable. I acknowledge that, instead of the usual rate of $7.50 for each half hour lesson, a reduced rate has been granted to me because of the number of lessons contracted for hereunder and accordingly I agree that this contract may not be cancelled. My failure to take lessons during the period designated above shall not relieve me of my obligations under this contract. No delay on your part in taking action under this contract shall be deemed a waiver of any of your rights. The undersigned authorizes any Attorney at law to appear before any Court of Record, State or Federal, in the United States of America, after the above indebtedness becomes due and waive the issuance and service of process and confess a judgment against the undersigned and/or any one or more of them

in favor of the holder hereof for the amount then appearing due together with costs of suits, and thereupon to waive all errors and all rights of appeal and stay of execution. The makers of this note, when more than one, are jointly and severally liable hereon and this warrant of attorney to confess judgment is a joint and several warrant of attorney. This contract expresses all the terms, conditions and provisions of our agreement, and you shall not be bound by any verbal modification in respect hereof unless written into this contract before it is signed."

The second note which is labelled "Agreement" declares *inter alia:*

"* * * This agreement is given as evidence of a debt and not in discharge thereof, but payment of this agreement in full will discharge such debt. * * *"

There was a reference to a debt owed the Arthur Murray Studios but there is no clear indication from the documents themselves that the "Agreement" upon which the action was based evidences the identical debt represented by the note executed to the Arthur Murray Dance Studios. The testimony itself is somewhat vague on this point yet it strongly suggests that both of these documents pertained to the dancing lessons which Rogers contracted to take and which he is shown to have taken.

The defenses asserted by Rogers were, first, duress in the execution of the instrument to the Adjustment Bureau, Inc. and, secondly, failure of consideration. Defendant also asserted a counterclaim in which he sought to recover the $423.50 which he had paid to Adjustment Bureau, Inc. The cause was submitted to the jury on the complaint and the counterclaim and the verdict was in favor of Rogers both on the issues raised by the complaint and on the demand contained in his counterclaim.

In seeking a reversal, Adjustment Bureau, Inc. urges that the record is devoid of evidence to establish the defenses of failure or lack of consideration and that the

contract was executed under the influence of duress. Further contentions of Adjustment Bureau, Inc. are that the trial court erred in allowing Rogers to introduce evidence outside the pre-trial order and also erred in refusing to give certain of its tendered instructions.

We must agree with Adjustment Bureau's contention that Rogers failed to sustain his burden of proof on the issue of duress. The testimony on this point consists merely of Rogers' statements that Adjustment Bureau threatened to garnishee his wages if he failed to execute this new agreement. This is clearly insufficient to justify submission of the question to the jury. *Walker v. Dearing,* 100 Colo. 28, 63 P. (2d) 513; *Heald v. Crump,* 73 Colo. 251, 215 Pac. 140; *McClair v. Wilson,* 18 Colo. 82, 31 Pac. 502.

The remaining question is whether there was valid consideration for the execution of the note to Adjustment Bureau, Inc.

In arguing the question whether there was a valid consideration for the execution of the note to Adjustment Bureau, Rogers emphasizes the fact that the new note, Exhibit A, was not given as a substitute for the original note which was made payable to Arthur Murray Dance Studios, or one of its tradenames. The testimony as to what transpired is left largely to conjecture.

Although Adjustment Bureau was in possession of Exhibit B at the trial, this instrument was not shown to have been endorsed or formally assigned to Adjustment Bureau. The testimony was that there had been an assignment, and yet from a reading of all of the evidence it is possible to conclude that the Arthur Murray Studios simply *referred* the account to Adjustment Bureau for collection on a 50% contingent basis and that following this referral, Adjustment Bureau called Rogers in to its office and persuaded him to execute Exhibit A.

It is significant that the two instruments are materially different. The first note made no provision for either interest or attorneys' fees, whereas the note in

which Adjustment Bureau is named as payee provided for both. The principal sum of the first note is $841.50, whereas, the principal sum in the note in suit is $981.00. This difference is explained by one of plaintiff's witnesses as advanced interest.

Also significant is the fact that no express agreement existed between Adjustment Bureau and Rogers stipulating that Exhibit A operated to suspend enforcement of Exhibit B or to supersede it. Thus, Adjustment Bureau (even assuming they had authority to so agree) has not undertaken to extend the date of payment of Exhibit B. This left Arthur Murray Studios free to pursue a remedy under it. How then can it be said that a benefit or other consideration flowed from Adjustment Bureau to Rogers? These controversial circumstances, including the ambiguous language in Exhibit A, were the basis of the trial court's action submitting the issue of lack of consideration to the jury. In the instruction (No. 2) which raised this issue, the jury was told:

"* * * That a pre-existing debt in the form of a prior instrument constitutes good and sufficient consideration for a new instrument, so long as the owner of the old instrument is the same party or parties as that made payee of the new instrument."

Under the facts and circumstances here presented, it is our view that the trial court acted properly in submitting this question to the jury. Recognition that lack of consideration is here an issue of fact does not, as Adjustment Bureau claims, undermine the principle that a pre-existing debt is a valid consideration for the execution of a new note. *W. T. Rawleigh Co. v. Dickneite,* 99 Colo. 276, 61 P. (2d) 1028. Nor is it inconsistent with the rule that forbearance to sue on a promissory note is a valid consideration for the execution of a new note. *Hunt v. Central Savings Bank & Trust Co.,* 76 Colo. 480, 231 Pac. 60.

We are aware of the rule that when a promissor executes a note to a promisee who is the payee in an

existing note, the latter furnishes consideration for the execution of the new instrument. 1 Corbin, *Contracts*, Sec. 211. In such circumstances it is easy to imply a consideration. In fact, there is a presumption that the second instrument is collateral security for the first. *Citizens' Bank of Wind Gap v. Lipschitz*, 296 Pa. 291, 145 Atl. 831. It has been noted, however, that the new promise must be coextensive with the existing debt in order for it to operate as a valid consideration. 1 Corbin, *supra*, Sec. 212. But where, as in the instant case, there is uncertainty (at the time of execution of the new note) as to the then ownership of the original note and uncertainty as to the effect, if any, of the new note on the legal status of the first note, the inference that the second extends the first is not clear. This uncertainty existed on the date of the execution of the note in suit and was sufficient to justify a jury conclusion of lack of consideration. The evidence and lack of it in the record was such that a juror could reasonably decide that there existed no forbearance to sue on the original note nor other consideration to support the note upon which the action was brought.

■ We have concluded that the matter must be retried. This is because the question is one of fact. 17 C.J.S., *Contracts*, Sec. 613. As pointed out above, the testimony is inconclusive as to the existence of consideration. On the other hand, the circumstances are such that lack of consideration is not indisputably established. The question is one upon which reasonable minds can differ and therefore it is a jury question. Cf. 52 A.L.R. 1416; *Haley v. Austin*, 74 Colo. 571, 223 Pac. 43.

On retrial the court's instruction with respect to this question should be more comprehensive than Instruction No. 2 quoted above. The sole test should not be whether the instrument in suit is owned by the same party who has title to the original instrument. The question of fact for the jury to determine whether Adjustment Bureau expressly or impliedly undertook, with authority from

Arthur Murray Studios, to refrain from enforcing Exhibit B, the first note. The ownership factor is merely one circumstance in this determination.

Having concluded that the trial court erred in submitting to the jury the question of duress in connection with the execution of the instrument, the judgment must be reversed and the cause remanded for a new trial on the question of lack of consideration.

MR. JUSTICE DAY, MR. JUSTICE KNAUSS and MR. JUSTICE HALL not participating.