**In re Michele A. BLAKESLEE, Debtor.**

**No. 07–1019–3F3.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Sept. 19, 2007.

Albert Mickler, for Debtor.

David E. Hicks, for Americredit.

Mamie L. Davis, Chapter 13 Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This case came before the Court upon Debtor's Motion to Value Secured Claim 1. Americredit Financial Services, Inc. ("Americredit") filed Response to Debtor's Motion to Value Secured Claim 1. The Court conducted a hearing on the matter on June 13, 2007. Upon the evidence and the arguments of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

#### Findings of Fact

On March 14, 2007 Debtor filed a petition under Chapter 13 of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). On September 17, 2006, Debtor had purchased a 2006 Chevrolet Trailblazer LS (the "Trailblazer"). The purchase was funded by Americredit due to assignment of the Simple Finance Contract by Coggin Chevrolet. The Simple Finance Contract states that the purchase price of the Trailblazer was $26,691.43. As part of the purchase of the Trailblazer, Debtor traded in a 2005 Ford Explorer (the "Explorer") on which she owed $25,600.00. The trade in allowance for the Explorer was $11,500.00. As a result, Debtor rolled in $14,100.00 in negative equity into the purchase of the Trailblazer. Debtor was also charged $599.00 for GAP insurance protection as a result of the purchase. The price of the GAP insurance, together with the negative equity, was added to the purchase price of the Trailblazer in the Simple Finance Contract. The total amount of the contract of $37,159.13 was to be paid off over seventy-two (72) months with an APR of 16.78%.

At the time of the filing of the petition, Debtor still owned the Trailblazer, which is secured by a lien held by Americredit.

Americredit subsequently filed Claim 1 with a total balance due of $37,923.40, claiming the entire amount as secured. Thereafter Debtor filed Motion to Value Secured Claim 1 (the "Motion to Value"), alleging the vehicle had a replacement value of $19,925.00 and was not protected by the hanging paragraph of 11 U.S.C. § 1325(a) since the claim included the negative equity and GAP insurance premium financed into the purchase price of the Trailblazer. Americredit filed a response, opposing the Motion to Value. The Court conducted a hearing on the matter on June 13, 2007 at which the Court heard oral argument.

### Conclusions of Law

Prior to the adoption of BAPCPA, a debtor could bifurcate a motor vehicle secured loan into secured and unsecured components, treating the claim as secured up to the extent of the vehicle and unsecured for the remainder. BAPCPA, which took effect on October 17, 2005, added a provision to 11 U.S.C. § 1325(a) commonly referred to as the "hanging paragraph". The hanging paragraph provides in pertinent part:

> "For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910–day[s] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle ... acquired for the personal use of the debtor ..."

In the instant case there is no dispute that: 1) the collateral for the debt is a motor vehicle, the Trailblazer; 2) the Trailblazer was purchased within 910 days preceding the filing of Debtor's bankruptcy petition; and 3) Debtor acquired the Trailblazer for personal use. The contested issue is whether Americredit has a purchase money security interest in the Trailblazer.

Debtor argues that the inclusion of a GAP insurance premium and negative equity into the Simple Finance Contract destroys Americredit's purchase money security interest. As a result, Debtor argues that the hanging paragraph does not apply and she can therefore bifurcate her claim into secured and unsecured parts pursuant to 11 U.S.C. § 506(a)(1). Americredit argues that it has a purchase money security interest in the Trailblazer notwithstanding the fact that Debtor purchased GAP insurance and financed negative equity as part of her purchase.

■ Whether a creditor has a purchase money security interest is determined by looking to state law. *In re Price*, 363 B.R. 734, 740 (Bankr.E.D.N.C.2007); *In re Peaslee*, 358 B.R. 545, 551 (Bankr. W.D.N.Y.2006), *rev'd on other grounds*, 373 B.R. 252, 254 (W.D.N.Y.2007); *In re Murray*, 352 B.R. 340, 346 (Bankr.M.D.Ga. 2006).[1] Section 679.1031 of the Florida Statutes provides in relevant part:

> (a) "Purchase-money collateral" means goods or software that secures a purchase-money obligation incurred with respect to that collateral.
>
> (b) "Purchase-money obligation" means an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor

---

1. Americredit asserts that the bankruptcy court cases' reliance on and transposition into the Bankruptcy Code of the Uniform Commercial Code's definition of a purchase money security interest is incorrect. Americredit asserts that were the Court to rely on the UCC definition to define the meaning of purchase money security interest under § 1325, an absurd result would obtain. The Court rejects these assertions.

to acquire rights in or the use of the collateral if the value is in fact so used. (2) A security interest in goods is a purchase-money security interest:

(a) To the extent that the goods are purchase-money collateral with respect to that security interest;

(b) If the security interest is in inventory that is or was purchase-money collateral, also to the extent that the security interest secures a purchase-money obligation incurred with respect to other inventory in which the secured party holds or held a purchase-money security interest.....

Fla. St. § 679.1031.

The Court must determine whether the negative equity and GAP insurance are part of the "price" of the Trailblazer or whether they were "value given to enable [Debtor] to acquire rights in ... the [Trailblazer]." Comment 3 to the Uniform Commercial Code provides that "the 'price' of collateral or the 'value given to enable' includes obligations incurred in connection with acquiring rights in the collateral ... The concept of 'purchase money security interest' requires a close nexus between the acquisition of the collateral and a secured obligation."

The Court turns first to the issue of negative equity. There is presently a split of authority as to whether negative equity represents the purchase price of a vehicle. A number of courts conclude that funds which are advanced by a creditor to pay off debt owed on a trade-in vehicle are not part of the vehicle's purchase price and thus do not give rise to a purchase money security interest. *See In re Pajot*, 371 B.R. 139, ——, 2007 WL 2109892 at *10 (Bankr.E.D.Va.2007); *In re Acaya*, 369 B.R. 564, 570 (Bankr.N.D.Cal.2007); *Citifinancial Auto v. Hernandez–Simpson*, 369 B.R. 36, 47 (D.Kan.2007); *In re Westfall*, 365 B.R. 755, 760 (Bankr.N.D.Ohio 2007);

*In re Price*, 363 B.R. 734, 741–742 (Bankr. E.D.N.C.2007). On the other hand, several courts conclude that funds advanced by a creditor to pay off debt on a trade in vehicle are part of the vehicle's purchase price and thus do give rise to a purchase money security interest. *General Motors Acceptance Corp. v. Peaslee*, 373 B.R. 252, 261 (W.D.N.Y.2007); *In re Cohrs*, 373 B.R. 107, 110 (Bankr.E.D.Cal.2007); *In re Petrocci*, 370 B.R. 489, 493 (Bankr.N.D.N.Y. 2007); *In re Graupner*, 356 B.R. 907, 923 (Bankr.M.D.Ga.2006) *aff'd*, No. 4:07–CV–37CDL, 2007 WL 1858291 (M.D.Ga.2007).

Americredit urges the Court to apply the in pari materia doctrine applied in a number of the above cited cases to determine the meaning of "price" of the collateral as set forth in Fla. Stat. § 679.1031. "The doctrine of *in pari materia* is a principle of statutory construction that requires that statutes relating to the same subject or object be construed together to harmonize the statutes and to give effect to the Legislature's intent." *Florida Dep't of State, Div. of Elections v. Martin*, 916 So.2d 763 (Fla.2005). The in pari materia doctrine should only be applied if the statute being construed is ambiguous. *Brown v. State*, 848 So.2d 361, 364 (Fla.Dist.Ct.App. 4th Dist.2003).

The Court finds that the term "price of the collateral" as set forth in Fla. St. § 679.1031 is clear on its face. As the bankruptcy court in *Peaslee* pointed out, the term "has the same meaning that it has always had in connection with transactions for the acquisition of any collateral, including a motor vehicle, which is the actual price of the collateral being acquired." *Peaslee*, 358 B.R. at 556. In light of the unambiguous nature of the term "price of the collateral", the Court finds that a resort to the in pari materia doctrine would be improper. Moreover,

the Court finds that even if there was ambiguity in the statute, a resort to the Florida Motor Vehicle Retail Sales Finance Act, the statute from which Americredit urges the Court to discern the meaning of "price of the collateral", would be improper given that the statute is a consumer protection statute which imposes disclosure requirements on automobile dealers and is not helpful in determining what constitutes a purchase money security interest under the Florida U.C.C. *See Pajot,* 371 B.R. at 149, 2007 WL 2109892 at * 6 (rejecting application of other state statutes to define "price" because none were enacted with purpose of defining purchase-money obligation under U.C.C.); *In re Acaya,* 369 B.R. 564, 570 (Bankr. N.D.Cal.2007) (rejecting application of California Automobile Sales Finance Act, a consumer protection statute imposing disclosure requirements on dealers, because it was not helpful in determining what constitutes a purchase money security interest under U.C.C.); *In re Peaslee,* 358 B.R. at 556 (rejecting "cash sale price" or any other price defined or referred to in other state or federal statutes because they were not enacted to define or expand upon U.C.C.'s definition of purchase money security interest.) The Court concludes that financed negative equity is not part of the "price of the collateral" as set forth in Fla. Stat. § 679.1031.

The Court also finds that negative equity is not used to enable a debtor to acquire rights in the collateral. Even if a creditor is unwilling to loan money on the purchase of a new vehicle without the payoff of an existing loan, the payoff of negative equity by the creditor is not a prerequisite to enable the debtor to obtain a legal interest in the vehicle's payoff, but merely an accommodation to facilitate the transaction. *In re Westfall,* 365 B.R. 755, 760 (Bankr. N.D.Ohio 2007). The Court finds that the legislature's failure to include negative eq-

uity in the text of the U.C.C. or in the official comments thereto despite the increasingly common financing of negative equity is not an oversight and does not provide justification for the Court to "place[ ] it amongst a list which would be the proverbial elephant in the room." *Id.* Additionally, the Court does not find the requisite close nexus between the payoff of negative equity and the acquisition of the new vehicle. The Court finds that negative equity is not of the same "type" or "magnitude" as the items listed in Comment 3. *See Pajot,* 371 B.R. at 152, 2007 WL 2109892 at * 9.

■ The Court turns to the issue of GAP insurance. As with negative equity, the Court finds that GAP insurance is not part of the "price" of a vehicle and is not "value given to enable" a debtor to acquire rights in a vehicle. The Court finds that it is only proper to include those nonessential items that enhance or improve the value of a vehicle, such as window tinting or undercoating in the "price" of a vehicle. Clearly GAP insurance does not fit into this category, as the sole purpose of GAP insurance is to protect the owner of a vehicle in instances in which the damage to a vehicle is greater than its value. As the very nature of GAP insurance does not involve the overall enhancement of a vehicle, it cannot be property construed to be part of the purchase price. Additionally, the Court does not find the requisite close nexus between GAP insurance and the acquisition of a vehicle.

Having found that Debtor's obligation to Americredit is partially a purchase money security interest and partially a non purchase money security interest, the Court must determine the extent of Americredit's purchase money security interest by applying either the dual status or the transformation rule. The dual status rule

provides that the secured lender has a purchase money security interest to the extent that the amount financed relates to the purchase price. *In re Price*, 363 B.R. at 745. However, under the transformation rule the secured creditor is deemed not to possess a purchase money security interest as the non-purchase money component transforms the entire claim into a non-purchase money security interest. *Id.*

In *Southtrust Bank of Alabama Nat'l Ass'n v. Borg–Warner Acceptance Corp.*, 760 F.2d 1240, 1242–43 (11th Cir.1985) the Eleventh Circuit Court of Appeals adopted the transformation rule. The court stated "[w]ithout some guidelines, legislative or contractual, the court should not be required to distill from a mass of transactions the extent to which a security interest is purchase money. Unless a lender contractually provides some method for determining the extent to which each item of collateral secures its purchase money, it effectively gives up its purchase money status." *Id.* at 1243. Americredit asserts that the law has changed since the Eleventh Circuit's analysis and that the Court has the discretion as to whether to apply the dual status rule or the transformation rule to a partial purchase money security interest. Paragraphs 6 and 7 of Fla. Stat. § 679.1031 provide:

(6) A purchase-money security interest does not lose its status as such, even if:

(a) The purchase-money collateral also secures an obligation that is not a purchase-money obligation;

(b) Collateral that is not purchase-money collateral also secures the purchase-money obligation; or

(c) The purchase-money obligation has been renewed, refinanced, consolidated, or restructured.

(7) A secured party claiming a purchase-money security interest has the burden of establishing the extent to which the security interest is a purchase-money security interest.

 While the Court agrees that it does have the discretion as to whether to apply the dual status or the transformation rule to a partial purchase money security interest, the Court finds that with respect to negative equity, the transformation rule is the appropriate rule to be applied. As the court in *Price* pointed out, notwithstanding the fact that a sales contract may clearly state the amount of the purported purchase price of a vehicle, a vehicle's true purchase price and the amount of negative equity is difficult to compute and is in fact a "mystery", with the actual purchase price being affected by an unreasonably low allowance on a traded in vehicle. *Price*, 363 B.R. at 745. A creditor's burden of establishing the difference between the purchase price and advances to pay the debt on the traded in vehicle is "a virtually impossible task." *Id.* Moreover, a court is burdened with the task of the allocation of pre-bankruptcy payments to the purchase money and non-purchase money portions of the secured debt. *Id.* The Court declines the task of "unwind[ing] the manipulations" which would be foisted upon it were it to apply the dual status rule to the financing of negative equity in retail installment contracts. *See Peaslee*, 358 B.R. at 560. Accordingly, the Court will apply the transformation rule to such situations.[2] Claim 1 is not secured by a purchase money security interest in any amount. Con-

---

**2.** Because the Court finds that the transformation rule is the appropriate one to apply in instances in which a creditor finances negative equity, the Court need not address which rule to apply with respect to GAP insurance. The Court addresses that issue in *In re Honcoop*, 07–1358–3P3.

sequently, the prohibition against strip down in § 1325(a) does not apply and Debtor may therefore bifurcate Claim 1 into secured and unsecured components pursuant to 11 U.S.C. § 506(a)(1).

### Conclusion

The Negative equity and GAP insurance which Americredit financed in the Simple Installment Contract are not part of the purchase price of the Trailblazer and thus do not give rise to a purchase money security interest under Florida's version of the Uniform Commercial Code. Pursuant to the application of the transformation rule, the inclusion of negative equity in the purchase of the Trailblazer transforms Claim 1 into a non-purchase money security interest. Consequently, the prohibition against strip down in § 1325(a) does not apply and Debtor may therefore bifurcate Claim 1 into secured and unsecured parts pursuant to 11 U.S.C. § 506(a)(1). The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law and will schedule an evidentiary hearing on the Motion to Value.