**In re Karen Lynn McCAULEY and John Michael McCauley, Debtors.**

**No. 08–11644 ABC.**

United States Bankruptcy Court, D. Colorado.

Nov. 20, 2008.

---

Guy B. Humphries, Denver, CO, for Debtors.

## ORDER DENYING DEBTORS' MOTION TO CONFIRM

A. BRUCE CAMPBELL, Bankruptcy Judge.

This matter is before the Court on the Debtors' Motion to Confirm their Amended Plan dated June 20, 2008 ("Plan") and the Objection thereto filed by Wachovia Dealer Services, Inc. ("Wachovia"). Wachovia financed the Debtors' purchase of a 2005 GMC Yukon XL ("Yukon") in December, 2006, less than 910 days prior to the filing of this Chapter 13 case. The Court must determine whether, and to what extent, the "hanging paragraph" of 11 U.S.C. § 1325(a) prevents the Debtors from "cramming down" Wachovia's secured claim to the value of the Yukon. The parties agree on the facts which are pertinent to this issue and agreed to submit the matter on their stipulated facts and simultaneous briefs.

### Stipulated Facts

The parties stipulated to the following facts:

The Debtors acquired the Yukon on December 26, 2006, from GO Pontiac Buick GMC Park Meadows ("GO") in Lone Tree, Colorado, within 910 days of their filing of this Chapter 13 bankruptcy case on February 14, 2008. In connection with the purchase and sale of the Yukon, GO and Debtor John McCauley entered into a Retail Installment Sale Contract ("Contract"). The Contract was assigned by GO to Wachovia. According to the Contract and the certificate of title issued by the State of Colorado, Wachovia has a perfected, first priority, purchase-money security interest in the Yukon. The Yukon is a motor vehicle acquired for the personal use of the Debtors.

The cash price of the Yukon was $33,175.39 and no cash down payment was made. Debtor John McCauley borrowed a total of $42,212.09 under the Contract. This $42,212.09 includes the cash price of the Yukon, gap insurance of $500.00, a service contract of $1,995.00, an administrative fee of $17.20, an emissions fee of $24.50, and $6,500.00 to pay of the lien on a 2005 Jeep Wrangler ("Jeep") that was traded in as part of the purchase of the Yukon. The $6,500.00 is the difference between the value of the Jeep, $19,000.00, and the amount necessary to pay off the then existing $25,500.00 lien on the Jeep. The parties refer to the $6,500.00 amount as the "negative equity" in the Jeep.

### The Plan's Treatment of Wachovia's Claim

The Plan treats Wachovia's claim as a secured claim to the extent of the value of the Yukon, which the Debtors allege is $22,000. The Plan proposes to pay Wachovia $22,000, plus interest at 5%, for a total of $25,505.00.

### The Hanging Paragraph

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") added an unnumbered paragraph to the end of § 1325(a) of the Bankruptcy Code, commonly referred to as the "hanging paragraph." The entire text of the hanging paragraph is as follows:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910–day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt con-

sists of any other thing of value, if the debt was incurred during the 1–year period preceding that filing.

Section 506(a) allows a Chapter 13 Plan to value secured claims at an amount equal to the value of the collateral securing the claim. The balance of the creditor's debt is treated as an unsecured claim.[1] The effect of the hanging paragraph is to prohibit this bifurcation, or cram-down, for certain types of secured claims. *In re Jones*, 530 F.3d 1284, 1289 (10th Cir.2008).

In the context of this case, application of § 506(a) would allow the Debtors to value Wachovia's secured claim at the value of the Yukon, which the Debtors assert is $22,000. The balance of Wachovia's claim, could be treated as an unsecured claim. In fact, the Debtors' Plan proposes to do just that. If the hanging paragraph is applicable to all of Wachovia's claim, as Wachovia argues, the Debtors' Plan could not be confirmed over Wachovia's objection unless the Plan treated the entire unpaid debt, which Wachovia asserts is $39,469.60, as a secured claim.

As set forth above, Wachovia and the Debtors have stipulated that the collateral securing Wachovia's claim is a motor vehicle acquired for the personal use of the Debtors within 910 days of their bankruptcy. They also agree that according to the Contract, Wachovia acquired a purchase-money security interest ("PMSI") in the Yukon to secure the financing for the Yukon's acquisition. They dispute only whether the additional financing of the negative equity in the Jeep caused Wachovia's security interest to become something other than a PMSI, thus rendering the hanging paragraph inapplicable.

**Discussion**

The treatment, under BAPCPA's hanging paragraph, of a debt which includes both refinancing of negative equity on a trade-in vehicle and financing of the purchase price of a car, has generated much recent litigation and many reported cases. There is a split of authority on this issue [2] and, to date, no Circuit Court has addressed it.

*A. The Breadth of the Purchase Money Security Interest*

[1, 2] The starting point in the analysis is the fact that the term PMSI is not defined in the Bankruptcy Code, and the Code does not direct that it is to be defined by state law or other applicable non-bankruptcy law. There is general agreement among courts that the lack of a definition in the Code, plus the use by Congress of a "term of art" from the UCC, suggests that Congress intended the bankruptcy courts to turn to state law to determine whether a particular security interest is a PMSI.[3] *See, In re Look*, 383 B.R. at

---

1. U.S.C. § 1322(b)(2) creates an exception to the operation of § 506(a) for secured debts where the collateral is the debtor's residence.

2. Compare, for example, *In re Look*, 383 B.R. 210 (Bankr.Me.2008)(financing of negative equity is not a PMSI, therefore, hanging paragraph not applicable to any of debt) with *In re Ford*, 387 B.R. 827 (Bankr.Kan.2008)(financing of negative equity is PMSI, therefore, hanging paragraph applies to entire debt), with *In re Padgett*, 389 B.R. 203 (Bankr.Kan.2008)(hanging paragraph not applicable to portion of debt attributable to financing of negative equity).

3. This is so despite the fact that Official Comment 8 to UCC section 9–103 limits the definition of PMSI to Article 9 of the UCC, specifically notes that the Bankruptcy Code has not expressly adopted a state law definition of PMSI, and states that, "[w]here federal law does not defer to this Article, this Article does not, and could not, determine a question of federal law." *See also, In re Westfall*, 376 B.R. 210 (Bankr.N.D.Ohio 2007)(adopting "federal definition" of PMSI for purposes of the hanging paragraph).

216–18. *See, also, In re Billings,* 838 F.2d 405, 406–07 (10th Cir.1988)(state law determines whether refinancing causes debt to lose its purchase-money character for purposes of § 522(f)).

The security agreement in this case provides that "Colorado and federal law shall apply." [4] Colorado's definition of PMSI is found in C.R.S. § 4–9–103. It provides that a security interest is a PMSI to the extent that the collateral secures "an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable to debtor to acquire rights in or the use of the collateral if the value is in fact so used." C.R.S. § 4–9–103(a)(2).

The critical question is this: was the financing of the negative equity in the Jeep "all or part of the price" of the Yukon, or did it "enable the debtor to acquire" the Yukon, as those concepts define a PMSI under the Colorado UCC? If so, Wachovia's entire debt is secured by a PMSI.

In making this determination, the Official Comment 3 ("Comment") to section 9–103 of the UCC provides some guidance. The Comment states, in part:

> As used in … the definition of "purchase-money obligation," the "price" of collateral or the "value given to enable" includes obligations for expenses incurred in connection with acquiring rights in the collateral, sales taxes, duties, finance charges, interest, freight charges, costs of storage in transit, demurrage, administrative charges, expenses of collection and enforcement, attorney's fees, and other similar obligations.
>
> The concept of "purchase-money security interest" requires a close nexus between the acquisition of collateral and

the secured obligation. Thus a security interest does not qualify as a purchase-money security interest if a debtor acquires property on unsecured credit and subsequently creates the security interest to secure the purchase price.

The meaning of the Comment in the context of a transaction involving negative equity financing is subject to different interpretations. Some courts have focused on the words "obligations for expenses incurred *in connection* with *acquiring* rights in the collateral" and have easily found that negative equity financing is such an "expense." *See, e.g., Gen'l Motors Acceptance Corp. v. Peaslee,* 373 B.R. 252, 259 (W.D.N.Y.2007) ("it is in fact difficult to see how [the payoff of balance on a trade-in] could *not* be viewed as such an expense")(Emphasis in original). *See also, In re Ford,* 387 B.R. at 831–32 (relying also on Barkley Clark's Article 9 treatise which states that financing of negative trade-in equity "fit[s] snugly into both prongs" of the UCC's PMSI definition.)

Other courts have focused on the list of specific items starting with "sales taxes" and have found that "[p]aying off an antecedent, undersecured loan on another vehicle is not the kind of 'expense' to which the Comment appears to be geared." *In re Padgett,* 389 B.R. at 209 *See also, In re Mitchell,* 379 B.R. 131, 137 n. 8 (Bankr.M.D.Tenn.2007)(clearly, the expenses the drafters had in mind were essentially transaction costs).

This Court agrees with the reasoning in the latter cases. While the financing of the negative equity in the Jeep did, in a broad sense of the word, "enable" the Debtors to acquire the Yukon, to interpret negative equity financing of a trade-in as a purchase-money obligation goes too far.

---

**4.** The parties did not attach a copy of the Contract to their stipulation of facts, however, a copy is attached to the Proof of Claim filed by Wachovia.

Such a reading of the UCC's PMSI definition ignores the evident intent of the UCC drafters to confine a PMSI to financing of the payment of the purchase price of collateral and incidental necessary expenses connected with that purchase. The Comment requires a "close nexus" between the acquisition of the collateral and the secured obligation. The financing of the payoff of a trade-in makes the purchase of a new car more convenient for a buyer, but it is not a necessary part of the cost to acquire the new car from the seller. Such convenience fails to satisfy the "close nexus" concept. The Comment also lists certain "expenses" incident to the selling price which are to be considered part of the "price" of the collateral or the "value given to enable" the debtor to purchase the collateral. The list of specific expenses is clearly limited to incidental transaction costs. It strains the normal usage of the term "expense" to apply it to the extension of an essentially unsecured loan to pay off a trade-in.

### B. "Transformation" or "Dual Status" Rule

■ The Court agrees with the Debtors that, to the extent Wachovia financed the payoff of the Jeep's negative equity, it did not acquire a PMSI in the Yukon. The Debtors then argue that, by application of the "transformation rule," because part of Wachovia's security interest is not a PMSI, the entire security interest loses its PMSI character. Consequently, the Debtors argue, the hanging paragraph does not apply, the Debtors may use § 506(a) to bifurcate the secured claim, and their Plan, which values Wachovia's secured claim at the current value of the Yukon, may be confirmed.

Courts are again split on this question. Some apply a "transformation rule" in this situation and hold that a non-PMSI part of the debt "transforms" the entire debt from PMSI status, and the hanging paragraph of 11 U.S.C. § 1325(a) is completely inapplicable. See, e.g., In re Blakeslee, 377 B.R. 724 (Bankr.M.D.Fla.2007). The court in In re Look reached the same result by focusing on the language of the hanging paragraph which states that it applies only "if" the creditor has a PMSI, not "to the extent that" a creditor has a PMSI. 383 B.R. at 220–21.

Courts rejecting the "transformation rule" adopt what is commonly referred to as the "dual status" rule. This reasoning applies the hanging paragraph only to the extent a security interest secures the purchase price of the new vehicle and related transaction costs. See, e.g., In re Acaya, 369 B.R. 564 (Bankr.N.D.Cal.2007). The existing secured obligation is divided into a PMSI and a non-PMSI, often by determining the percentage of the original loan which was attributable to the new car's financing. See, e.g., In re Busby, 393 B.R. 443, 451 (Bankr.S.D.Miss.2008). This percentage is multiplied by the existing balance on the loan to quantify the amount of the secured claim that must be paid in full, with interest, under the hanging paragraph. The negative equity portion of the secured claim may be treated as an unsecured debt using § 506(a).

There appear to be no reported cases from Colorado state courts applying either the "transformation rule" or the "dual status" rule in a case involving financing of negative equity on a trade-in. The Tenth Circuit, however, applying Colorado law, rejected a strict transformation rule in a case dealing with the refinancing of a PMSI and lien avoidance under § 522(f). In re Billings, 838 F.2d at 406–07 (extrapolating from Haley v. Austin, 74 Colo. 571, 223 P. 43, 45 (1924), the principle that, under Colorado law, the intent of the parties determines whether a refinanced debt retains its purchase money character).

The language used in the Colorado UCC's definition of PMSI itself seems to contemplate a "dual status" rule, when it states that a security interest in goods is a PMSI *"to the extent"* the goods secure an obligation incurred as all or part of the purchase price of the goods. C.R.S. § 4–9–103(b). If a security interest can be a PMSI to a certain extent, then it can also be a non-PMSI to the extent it does not fit the definition. Further, application of the transformation rule would appear to frustrate Congress' intent in enacting the hanging paragraph. It is evident that Congress wanted to prohibit debtors from being able to cram down secured claims for cars that they purchased within two and a half years prior to their Chapter 13 filing. Applying a strict transformation rule would penalize a vehicle lender for extending additional unsecured credit as a convenience to new car buyers. No apparent purpose would be served by penalizing lenders who choose to undertake such transactions.

### Conclusion

For the reasons stated above, the Court concludes that Wachovia has a PMSI only to the extent of the purchase price of the Yukon and incidental transactional expenses. The hanging paragraph of § 1325(a) applies only to the extent of this PMSI. In order to comply with the requirements of § 1325(a)(5)(B), the Debtors must treat the proportion of Wachovia's debt attributable to the purchase price of the Yukon, and such expenses, as a secured claim. The financing of the Debtors' negative equity in the Yukon is not entitled to PMSI treatment under the hanging paragraph. It is accordingly,

ORDERED that Wachovia's objection to confirmation of the Debtors' Plan is sustained, and the Debtors' Motion to Confirm the Plan is denied; it is

FURTHER ORDERED that, within twenty days of the date of this Order, the Debtors may file an amended plan consistent with this Order, a motion to confirm the amended plan, and a Rule 202 notice to all creditors, failing which, this case may be dismissed.